[No. 43805. En Banc. July 22, 1976.]

ROBERT J. CHENEY, JR., ET AL, *Appellants*, v. THE CITY OF MOUNTLAKE TERRACE, ET AL, *Respondents*.

LOUIS MAICHEL, ET AL, *Appellants*, v. THE CITY OF MOUNTLAKE TERRACE, *Respondent*.

*J. Richard Aramburu,* for appellants.

*William F. Hennessey, City Attorney,* and *Adair, Kasperson, Petersen & Hennessey,* for respondent Mountlake Terrace.

*Slade Gorton, Attorney General,* and *Charles F. Secrest, Assistant,* for respondent Urban Arterial Board, et al.

BRACHTENBACH, J.—This action involves alleged violations of the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, and RCW 47.26 (which deals with the Urban Arterial Board) by the City of Mountlake Terrace (City) and the Urban Arterial Board (UAB) in the planning, construction, and approval of funds for an urban arterial project. Consolidated on appeal is a second action against the City for injunctive relief based upon the theory that construction of the subject road project constitutes a nuisance. Plaintiffs are residents of the City and own residential property abutting upon this portion of the arterial project. Both actions were dismissed by the trial court. We affirm.

The total road project, only part of which is the subject of this appeal, is a 2.2-mile urban arterial project which lies in a general east-west direction from its beginning point at approximately 76th Avenue West to its easterly terminus at Cedar Way in the City of Mountlake Terrace. The following illustration graphically depicts the project. The project was approved by the UAB in 1968 and was a joint venture between the UAB, the cities of Edmonds and Mountlake Terrace, and Snohomish County. Prior to its adoption as an urban arterial project, the project was established on the comprehensive plan for the City and was based upon the apparent need for such a facility demonstrated at that time. Subsequent traffic studies have demonstrated a continued need for this major east-west arterial.

CEDAR WAY

COMPLETED AS OF.
Sept. 18, 1972

THE PROJECT
APPROVED
BY U.A.B IN
1968

64Th. AVE W.

THE UNCOMPLETED
PORTION OF THE
PROJECT AND
SUBJECT OF
THIS ACTION

THE PORTION
OF THE PROJECT
ADDRESSED
IN THE
EIS

76Th AVE W.

U.S. 99

CONNECTION PROVIDED BY
ANOTHER U.A.B.
PROJECT

Since its adoption in 1968, a major portion of the project has been completed. See illustration. As of September 1972, approximately 0.625 miles of roadway were uncompleted. The uncompleted section is located in the City of Mountlake Terrace and is the subject matter of this litigation. The

precipitating cause of the litigation was the letting of a contract by the City for construction of approximately 1,500 feet of the highway westerly of the east terminus of the unimproved portion of the project.

Pursuant to the joint undertaking, the City acquired the right-of-way for that portion of the project immediately abutting the homes of the individual plaintiffs herein. In 1973, the City commenced negotiations with the then owners of a private parcel to acquire the remaining right-of-way. At that time it was contemplated that all of the uncompleted project would be improved in one final phase contract.

In July 1973, the City authorized an environmental impact statement (EIS) to be prepared for the construction of the highway along the uncompleted project and also required the then owner of the remaining private parcel for which the City was attempting to acquire the right-of-way to prepare an EIS on the owner's then contemplated condominium project. The private owner declined to submit an EIS because plans for the condominium project had been abandoned. A condemnation action was subsequently commenced against the owner of this private parcel to acquire the necessary right-of-way. After further negotiations with the owner of the private parcel, the City in 1974 determined to terminate the condemnation proceedings and eliminate this portion of the project from its plans for immediate construction. Plans proceeded, however, for construction of that portion of the project for which the City held the right-of-way.

Based upon information contained in the EIS, the City requested a deviation from design standards from the UAB for purpose of lessening the noise and visual impact of the uncompleted portion of the project upon abutting property owners. This deviation from design standards, subsequently approved by the UAB, was one of the methods discussed in

the EIS to mitigate environmental harm. It consisted of narrowing the roadway width from 44 feet to 32 feet, thereby eliminating two lanes of traffic, and moving the center line away from adjacent residences, and erecting a noise barrier, which will result in less noise impact and provide a buffer between the road and abutting properties.

Unable to obtain a dedication of the remaining right-of-way from the owner of the private parcel, the City determined at its council meeting on October 21, 1974, that it would hold out and not construct this portion of the project with the hope or expectation that in the future the present or some subsequent owner of the private parcel would be willing to dedicate the right-of-way as a condition upon platting or developing the property. Upon completion of plans and specifications for the arterial project, the revised cost estimate was furnished to the UAB in February 1975, requesting an additional $50,000 of urban arterial trust funds be granted the project by the UAB as provided for in RCW 47.26.460. The revised cost estimate disclosed the City's intention not to let out for construction the whole uncompleted project. Such a plan, however, was unacceptable to the UAB and the City was required to make a commitment to complete the entire project before the UAB would consider the City's request. In accordance with the UAB's request, the City adopted on March 3, 1975, a resolution committing itself to complete the entire project by 1978.

On November 27, 1974, following the filing of the EIS, plaintiffs filed the first cause of action alleging violations of SEPA and RCW 47.26 (UAB). The nuisance action was filed on March 19, 1975, and a temporary restraining order issued on the same day by the trial court. A hearing was held on both actions for the purpose of considering the propriety of a temporary injunction on March 24, 1975, which was granted on March 25. The trial commenced on April 14, 1975, and resulted in a judgment of dismissal.

Plaintiffs raise three issues. The first involves alleged violations of SEPA. Plaintiffs contend that the EIS pre-

pared and adopted by the City was insufficient to meet the requirements of SEPA and further that an additional compliance with SEPA is required due to the change in the very nature of the project. Plaintiffs contend that the City had determined to await development of the privately owned parcel over which it had no right-of-way with the hope or expectation that the developer of the property would dedicate a right-of-way and participate in the cost of construction. This, plaintiffs assert, will result in the City's entanglement in a property development in the future and put it in a position of being coerced to approve the developer's later proposal.

There are two answers to these arguments, one factual, the other legal. First, when the City authorized construction of the portion of the road here challenged, there was absolutely no proposal of any nature for development of the private property. Second, the City has irrevocably committed itself to complete the entire road by 1978. It has three alternative means of financing acquisition of the right-of-way and construction. The court found that the City has considered and has available these alternatives. No error is assigned to this finding.

Thus the City is in no manner bound to accede to any developer's proposals. Indeed, in view of the City's commitment of completion, made to the UAB, it seems highly unlikely that the developer would contribute anything to the project. The City is committed to complete the entire road project. It is not committed to any action as to the type, manner, or timing of development of the private parcel. The completion of the road is in no way dependent upon or intertwined with the development of the property. This fact distinguishes this case from *Merkle v. Port of Brownsville*, 8 Wn. App. 844, 509 P.2d 390 (1973), and *Juanita Bay Valley Community Ass'n v. Kirkland*, 9 Wn. App. 59, 510 P.2d 1140 (1973). In these cases there were pending rezone or permit applications, or some other element of construction which formed part of a totally integrated plan for development with the immediate project. In

the present case, there is simply no factual connection between the alleged condominium project and construction of this urban arterial.

The legal issue is whether the possible future development of the private parcel is an environmental consequence which the City must evaluate at this time. This question stems from the mandate of RCW 43.21C.030(2)(c) that major actions significantly affecting the quality of the environment require an environmental impact statement, the content of which is described in quite broad terms by the statute.

■ Implicit in the statute is the requirement that the decision makers consider more than what might be the narrow, limited environmental impact of the immediate, pending action. The agency cannot close its eyes to the ultimate probable environmental consequences of its current action. *See Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 513 P.2d 36 (1973); *Loveless v. Yantis*, 82 Wn.2d 754, 513 P.2d 1023 (1973). On the other hand, it is impractical if not impossible to identify and evaluate every remote and speculative consequence of an action.

The mandate of SEPA does not require that every remote and speculative consequence of an action be included in the EIS. The adequacy of an EIS must be judged by application of the rule of reason. This is the approach adopted by the federal courts. *Trout Unlimited v. Morton*, 509 F.2d 1276, 1283 (9th Cir. 1974); *Natural Resources Defense Council, Inc. v. Morton*, 458 F.2d 827, 837 (D.C. Cir. 1972). In *Trout Unlimited*, the court stated at page 1283:

> Appellants urge that the EIS is inadequate because it fails to discuss many possible environmental consequences. Many of these consequences while possible are improbable. . . . This is consistent with the (CEQ) Council on Environmental Quality Guidelines and the frequently expressed view that adequacy of the content of the EIS should be determined through use of a rule of reason. . . . A reasonably thorough discussion of the

significant aspects of the probable environmental conse-
quences is all that is required by an EIS.

(Citations omitted.)

The application of the rule of reason is illustrated by a
comparison of *Trout Unlimited v. Morton, supra,* with the
case of *City of Davis v. Coleman,* 521 F.2d 661 (9th Cir.
1975). *Trout Unlimited* involved a two-phased congression-
ally authorized project. The first phase called for construc-
tion of a dam and reservoir. The second phase involved
disposition of a specified amount of active reservoir capac-
ity, but only after a finding of "feasibility" by the Secre-
tary of Interior and appropriation of funds by Congress.
Part of the attack on the EIS for phase one was grounded
upon its failure to discuss the environmental impact of
phase two. The court commented at page 1285:

> The appellants contend that the EIS is fatally inade-
> quate because it does not discuss the environmental im-
> pact of the Second Phase. They rely upon cases which
> hold that a series of interrelated steps constituting an
> integrated plan must be covered in a single impact state-
> ment. We believe these authorities are inapposite and
> that the failure of the EIS to discuss the Second Phase
> does not render it inadequate. The distinction between
> those situations in which it has been held that the EIS
> must cover subsequent phases and that before us is that
> here the First Phase is substantially independent of the
> Second while in those in which the EIS must extend
> beyond the current project, that project was dependent
> on subsequent phases. The dependency is such that it
> would be irrational, or at least unwise, to undertake the
> first phase if subsequent phases were not also under-
> taken. This is not the case here. Congress clearly in-
> tended that the First Phase of this project would be con-
> structed without regard to whether the Secretary ever
> submits a finding of "feasibility" with regard to the Sec-
> ond Phase.

(Footnotes omitted.)

In contrast, the court in the *City of Davis v. Coleman,
supra,* held that an EIS was required for the construction
of a freeway interchange. While this case is distinguishable

from the situation in *Trout Unlimited* in that no EIS was prepared, the court's decision to require an EIS bears directly on the question of whether an EIS must discuss the remote and speculative consequences of a proposed project. The court found that the interchange was not being built to meet existing traffic needs, but rather to stimulate and service future industrial development. The project's justification was premised on the industrial development as contained in the governmental unit's planning scheme. The court held that an EIS should take into account and evaluate these potential but very real secondary effects.

In this case the road is being built to serve existing traffic needs, not to encourage development of the private parcel. The future use of the private parcel is too remote and speculative to call for present evaluation of its future development. If and when a proposed project is brought to the City for the private parcel, it can then deal with environmental considerations. *See Aberdeen & R. R.R. v. SCRAP*, 422 U.S. 289, 320, 45 L. Ed. 2d 191, 95 S. Ct. 2336 (1975).

The second issue concerns an alleged failure by the UAB to comply with statutory and regulatory requirements in approving the $50,000 increase in urban arterial funding for this project. Plaintiffs contend that the UAB should have cancelled the project and seek to enjoin the UAB absolutely, or in the alternative, temporarily, pending a review by the UAB of a possible reduction in the scope of the project. The UAB has waived any questions of plaintiffs' standing to challenge.

RCW 47.26.460 provides:

> The board shall adopt reasonable regulations pursuant to which urban arterial trust account funds allocated to a project may be increased upon a subsequent application of the county or city constructing the project. The regulations adopted by the board shall take into account, but shall not be limited to, the following factors: . . . (2) whether the project for which an additional allocation is requested can be reduced in scope while retaining a usable segment; . . .

*See* WAC 479-20-033 and -036.

Plaintiffs' contentions are not supported by the trial record. The uncontradicted testimony at trial evidences that the UAB acted within the statute. The UAB director testified that the board specifically considered and rejected a reduction in the scope of the total project before authorizing the additional funds. The UAB determined this reduction was not feasible in light of the existing traffic studies because it would result in a dead end road rather than the needed connecting arterial. This met the requirements of the statute and regulations.

The final issue stems from the trial court's dismissal of plaintiffs' nuisance claim. The court ruled that RCW 7.48.160[1] was applicable as interpreted by *Deaconess Hosp. v. State Highway Comm'n*, 66 Wn.2d 378, 403 P.2d 54 (1965). We need not decide whether a project authorized by city ordinance falls within this statute. The judgment of the trial court will not be reversed when it can be sustained on any theory, although different from that indicated in the decision of the trial judge. *Thompson v. Thompson*, 82 Wn.2d 352, 510 P.2d 827 (1973); *Retail Clerks Local 629 v. Christiansen*, 67 Wn.2d 29, 406 P.2d 327 (1965).

The trial court found as a matter of fact that

[T]here is no evidence that the design of the street is improper, that it will be negligently constructed or improperly maintained. There is nothing in the evidence that would indicate that the street is different in its inherent qualities or in its effect on the adjoining premises than the literally hundreds of thousands of other streets now built or in the process of being built throughout this state and country.

No error is assigned to this finding. The burden of proof rests with the plaintiffs to factually establish that this project results in a nuisance. Plaintiffs have failed to meet this burden. The trial court's dismissal of the nuisance action is

---

[1]RCW 7.48.160 states:

"Nothing which is done or maintained under the express authority of a statute, can be deemed a nuisance."

amply supported by the record and the court's own findings of fact.

The judgment is affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and HOROWITZ, JJ., concur.