[No. 47493–1. En Banc. October 8, 1981.]

CATHCART–MALTBY–CLEARVIEW COMMUNITY COUNCIL, ET AL, *Appellants,* v. SNOHOMISH COUNTY, ET AL, *Respondents.*

*Smith, Brucker, Winn & Ehlert, Thomas H. S. Brucker,* and *Lynn D. Weir,* for appellants.

*Russ Juckett, Prosecuting Attorney,* and *Robert Terwilliger, Deputy,* for respondent Snohomish County.

*Edward Heavey,* for respondent Hillis Homes, Inc.

*Graham & Dunn,* by *Clemens H. Barnes* and *Robert A. Medved,* for respondents Snohomish Cascade View Properties, et al.

*Alhadeff, Leavitt & Wesley,* by *Stephen R. Powell,* for respondent Nu Pacific Co.

UTTER, J.—This case involves cross appeals from a superior court judgment affirming a zoning change for two parcels of land in Snohomish County. One parcel, Silver Firs, consists of approximately 500 acres. The other, a 1,300–acre parcel, is known as Snohomish–Cascade. The developers of these properties intend to construct 6,000 residential units which may ultimately accommodate 19,000 people. The trial court approved the rezone and we believe properly so.

Prior to the proposed development, these tracts were subject to the Hillman Area Comprehensive Plan. It permitted the construction of 6 dwelling units per acre and zoned the area for rural and residential uses. That plan, however, was partially replaced in 1977 with another regulatory program, the North Creek Comprehensive Plan. The replacement primarily affected the Silver Firs tract. Most of the Snohomish–Cascade site remained under the Hillman plan.

The North Creek plan was implemented with the expectation that the Silver Firs property would be rezoned pursuant to a master plan submitted by the developers. Pending the approval of a master plan, the Silver Firs site and a portion of the Snohomish–Cascade property were zoned as "suburban agriculture"—a designation which requires 1–acre lots.

In March 1978, the developers of these properties applied for a rezoning of the area, pursuant to their master plan. An Environmental Impact Statement (EIS), identifying the effects of the plan, was submitted. The Snohomish County

Planning Commission recommended to the Board of Snohomish County Commissioners (Board) that the rezone amendments be denied. They believed the master plan, as submitted by the developers, was inconsistent with the North Creek plan and that any development should await the complete revision of the Hillman plan.

These recommendations were rejected by the Board and it approved, on February 28, 1979, both the master plan and the rezone proposals. In exchange for the rezoning, the developers executed a zoning agreement requiring them to comply with various ordinances, to submit supplemental EIS's with later sector plan applications, and to share in the cost of providing many of the public services which will be required by the new development. The agreement, which was limited to rezoning the area, did not confer any specific plat or subdivision approval. Such approvals were to be sought, and acted upon, in the future. This agreement and the rezoning resolutions were publicized on the 14th and 21st of April, 1979.

As a result of the agreement, the Silver Firs site was zoned for an average density of 4 dwelling units per acre and the density of the Snohomish–Cascade property was left to be determined by a new plan (the Maltby Area Comprehensive Plan) to be later developed by the County.

Dissatisfied with the Board's actions, residents in nearby communities (hereinafter petitioners) applied for a writ to review the rezone approval. The application was made on March 27, 1979, less than 30 days after the Board's initial decision. The writ alleged that the County had failed to consider the welfare of the area affected by the rezone, had rezoned the tracts in a manner inconsistent with the comprehensive land use plans then in effect, and had based its decision upon an inadequate EIS.

As the trial began, respondents Hillis Homes and Snohomish–Cascade joined in motions to dismiss for failure to timely commence the action and for failure to join indispensable parties. Twenty–One Oaks Associates, one of the owners of record, as well as contract vendors, mortgagees,

and beneficiaries under deeds of trust to the parcels were neither named in nor served with the writ.

The Superior Court held that a 30–day limitation period applied, rendering the action timely, and further concluded that all necessary parties had been joined. As to the merits of the writ, the court ruled that the Board had acted properly and that the rezoning approvals were lawful.

## I

At the time of the County's rezone decision, there was no ordinance limiting the time in which such decisions could be reviewed.[1] The trial court ruled, for reasons which are unclear, that a 30–day limitation period applied.

As to the EIS issues, the suit was timely, for RCW 43.21C.080 provides that SEPA challenges may be brought within 30 days. Regarding the other alleged errors, the respondents argue that RCW 36.32.330 bars their review. That statute provides that "[a]ny person may appeal . . . any decision or order of the board of county commissioners . . . within twenty days . . ."

In *State ex rel. Lyon v. Board of County Comm'rs,* 31 Wn.2d 366, 196 P.2d 997 (1948), we rejected a similar argument, stating that RCW 36.32.330 does not apply to county land use decisions. *See also Chrobuck v. Snohomish County,* 78 Wn.2d 858, 480 P.2d 489 (1971). We reasoned that the law

> relating to city, town, county, and regional planning, imposes duties upon the county commissioners distinct from their ordinary and usual duties and is a special statute for a special purpose; and the conclusion is inescapable that the general statute with reference to appeals from decisions of the board . . . is inapplicable . . .

*Lyon,* at 370–71.

In *Pierce v. King County,* 62 Wn.2d 324, 332, 382 P.2d 628 (1963), we further stated that where there is no express

---

[1]Subsequent to that decision, however, the County promulgated a law requiring the review process to commence within 30 days of any rezone action. Snohomish County Code 18.92.150.

law to the contrary, the "rule of timeliness" applicable to appeals does "not apply to review of a zoning regulation." Instead, absent a controlling statute or ordinance, the writ must only be filed within a reasonable period after the rezone decision. Since the writ was filed within 30 days of the County's decision, it was timely.

## II

One of the owners of record, Twenty–One Oaks Associates, was neither named in nor served with the writ. Also not named or served were contract vendors, mortgagees and beneficiaries to deeds of trust. It is argued that they were indispensable parties pursuant to CR 19 and consequently the writ should have been dismissed.

It appears no case has specifically confronted this issue. One of this state's appellate courts, however, has stated in dictum that a beneficiary under a deed of trust should be made a party. *Veradale Valley Citizens' Planning Comm. v. Board of County Comm'rs*, 22 Wn. App. 229, 588 P.2d 750 (1978).

The petitioners argue that since the owners and developers were parties to the writ, the financiers were not prejudiced by nonjoinder. They argue that such parties are not indispensable, *see* CR 19, on the basis that the owners will invariably protect the financiers' interest, since their interests are substantially the same.

The doctrine of indispensability is not jurisdictional but rather is founded on basic equitable considerations. 3A J. Moore, *Federal Practice* ¶ 19.19, at 19–345 (2d ed. 1979). A financial interest in the subject matter does not by itself make one an indispensable party. *Id.* at 19–129, 19–209. Thus, in this state, it has been held that mortgagees are not necessary parties to lien foreclosure proceedings. *Washington Asphalt Co. v. Boyd*, 63 Wn.2d 690, 388 P.2d 965 (1964); *see also Jensen v. Arntzen*, 67 Wn.2d 202, 406 P.2d 954 (1965). Given the similarity of interests between the owners, developers, and those holding security interests, we conclude that the latter were not indispensable parties to

this action.

■ Owners of the rezoned property are, however, indispensable parties and ordinarily the failure to join them will warrant dismissal. *Veradale, supra; Andrus v. County of Snohomish,* 8 Wn. App. 502, 507 P.2d 898 (1973); *Board of County Comm'rs v. Carter,* 193 Colo. 225, 564 P.2d 421 (1977); *Westlund v. Carter,* 193 Colo. 129, 565 P.2d 920 (1977). In reaching that result, courts have considered several factors:

> (1) The successful property owner–applicant is a necessary party because he is "most affected" by the granting of the writ of review, and he should be a party to any proceeding, the purpose of which is to invalidate or affect his interests. *Andrus v. County of Snohomish,* 8 Wn. App. 502, 507–08, 507 P.2d 898 (1973). (2) As a quasi–judicial body, a zoning board has no legal interest in the ultimate decision, but represents the public interest, and is primarily concerned with assisting the court to make a proper judgment. *Sumner–Tacoma Stage Co. v. Department of Public Works,* 142 Wash. 594, 597, 254 P. 245 (1927). By contrast, a property owner would have a very real interest in opposing the demands of others who seek to reverse the decision of the zoning board on appeal. (3) There is nothing in the statutes concerning the writ of certiorari to indicate that an adversary proceeding is not contemplated. (4) A judgment made by the court in a review by certiorari would not be binding upon the property owners who were not made parties, and it, therefore, could not take away the property interests they have established under our zoning laws. *Sumner–Tacoma Stage Co.,* at 600.

(Footnote omitted.) *Veradale,* at 232–33.

We find that analysis persuasive and conclude that Twenty–One Oaks Associates was an indispensable party which should have been joined.

Under other circumstances, that conclusion would require dismissal of the writ. We believe, however, that the sheer magnitude of the proposed project in this case requires that the substantive issues be addressed. For the reasons which permit us to address moot cases, this case requires further comment.

■ A moot case will be reviewed if its issue is a matter of continuing and substantial interest, it presents a question of a public nature which is likely to recur, and it is desirable to provide an authoritative determination for the future guidance of public officials. *In re Patterson,* 90 Wn.2d 144, 579 P.2d 1335 (1978); *Sorenson v. Bellingham,* 80 Wn.2d 547, 496 P.2d 512 (1972). This case has those three factors. This development is the size of Aberdeen or Kent and thus it presents questions of substantial public importance. As the project is to evolve over the next 25 years, the issues raised in this case will repeatedly surface and will at some future time require a judicial resolution. Furthermore, as we have never determined the EIS requirements for a project of this scope, an authoritative determination of that issue is desirable. For these reasons, we will address the following issues.

### III

Petitioners assert that the EIS is deficient as a matter of law because it fails to adequately discuss several adverse consequences of the proposed development. They further contend that the County, by relying on such an inadequate EIS and in failing to mitigate those consequences, has acted arbitrarily and capriciously. The consequences which concern them include: induced residential and commercial growth outside the development, aggravated erosion problems, overburdened roads, overcrowded schools, and inadequate sewage systems. They primarily argue that the EIS was deficient in not identifying the costs of providing public services to the development and in not discussing how the County will finance those projects. They repeatedly allege that the impact on the surrounding municipalities was not considered.

Notwithstanding the respondents' denials, petitioners' allegations are mostly correct. The EIS is a "bare bones" presentation of the problem. Although it correctly identifies many possible adverse consequences, it does not indicate their magnitude and, in several instances, simply suggests

that their impact could be later assessed when the developers seek sector approvals. The EIS, as petitioners allege, is particularly devoid of any quantitative discussion as to cumulative and secondary effects on surrounding areas. Though it mentions that there will be a serious shortage of roads and schools, it suggests that those problems will remedy themselves as the development occurs. As a generalization, the EIS identifies the consequences, but offers no quantitative discussion of their possible magnitude or the costs of mitigating them.

The adequacy of an EIS is a question of law. *Barrie v. Kitsap County,* 93 Wn.2d 843, 613 P.2d 1148 (1980); *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974). Courts will review an EIS to determine whether the project's environmental effects are reasonably disclosed, discussed, and substantiated. *Id.; Cheney v. Mountlake Terrace,* 87 Wn.2d 338, 552 P.2d 184 (1976). This requires an analysis of ultimate probable consequences, including those secondary and cumulative, whether social or economic. *Id.* It also mandates that extrajurisdictional effects be addressed and mitigated, when possible. *Save a Valuable Environment v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978).

In *Save,* an EIS was considered deficient, and the zoning approval invalidated, because the EIS failed to address the extrajurisdictional consequences of a proposed shopping center. Similarly, in *Barrie,* the zoning approval and EIS were invalid because of the failure to assess, and to attempt some mitigation of, the impact of a shopping center on a downtown business district. From this authority and given the absence of any quantitative analysis, it is argued that the EIS in this case is deficient.

Respondents contend, however, that because of the nature of this project, the EIS is adequate. They point to the fact that when the developers seek sector, division of development, and plat approvals, a more detailed EIS can be required. They argue that by waiting, a more specific analysis is possible and thus informed decision making will

be facilitated. We agree.

■ We have approved "piecemeal" EIS presentation in limited circumstances. *Narrowsview Preservation Ass'n v. Tacoma,* 84 Wn.2d 416, 526 P.2d 897 (1974); *Barrie, supra; Cheney, supra.* In *Narrowsview,* at page 424, it was stated:

> It is entirely consistent for government . . . to require an environmental impact statement at such time as a preliminary plat or building permit was issued for a specific project when details of the specific structure and use of the property are more clearly defined. *See Eastlake Community Council v. Roanoke Associates, Inc.,* 82 Wn.2d 475, 513 P.2d 36 (1973); *Loveless v. Yantis,* 82 Wn.2d 754, 513 P.2d 1023 (1973).

Piecemeal review is permissible if the first phase of the project is independent of the second and if the consequences of the ultimate development cannot be initially assessed. *Barrie, supra; Cheney, supra.*

This project is an appropriate candidate for a piecemeal EIS presentation, for at this time it is extremely difficult to assess its full impact. Given the magnitude of the project, the length of time over which it will evolve, and the multiplicity of variables, staged EIS review appears to be an unavoidable necessity. At this point, an exhaustive EIS is impracticable in light of the difficulty of determining in the abstract, for a period of 25 years, such things as the rate at which the project will develop, the particular location of the housing units, the growth of the tax base which will support the needed public services, the evolution of transportation technologies, and the evolving socioeconomic interests of the prospective population.

This case is unlike many where piecemeal EIS preparation has been disapproved. *See, e.g., Cady v. Morton,* 527 F.2d 786 (9th Cir. 1975); *Lathan v. Volpe,* 455 F.2d 1111 (9th Cir. 1971). An often–cited reason for denying piecemeal review is that it may permit adverse consequences to go unidentified until after the project has so progressed that preventing its completion, or mitigating its consequences, becomes either unlikely or impossible. *Cady,*

*supra; Lathan, supra.* That concern, however, is absent in this case, for the record shows that Snohomish County has in the past refused plat approvals, even after the sector and subdivision stages, because road, sewer, and water problems had not been resolved. This is not a case where the decision–making body routinely approves all development plans.

We therefore conclude that, on these facts, the initial EIS is sufficient. It identifies the potential impacts and provides a framework for further EIS preparation. But our approval of this EIS does not relieve the developers from ultimately complying with all SEPA requirements. As the data becomes available or, at the latest, when sector plan approval is sought, the secondary and cumulative impacts on the entire affected area, as defined in *Save,* must be quantitatively assessed and the costs of mitigating them identified.

## IV

Petitioners assert that the County acted arbitrarily and capriciously and that its action constituted spot zoning because, they contend, the rezoning is inconsistent with existing land use plans.

All zoning actions must bear a substantial relation to the public welfare. *Duckworth v. Bonney Lake,* 91 Wn.2d 19, 586 P.2d 860 (1978); *Parkridge v. Seattle,* 89 Wn.2d 454, 573 P.2d 359 (1978); Note, *Zoning—Rezones: New Standards for Governing Bodies—Parkridge v. City of Seattle,* 55 Wash. L. Rev. 255 (1979). Comprehensive land use plans and promulgatory zoning regulations are presumed valid and are invalid only for manifest abuse of discretion. *Narrowsview, supra; Duckworth, supra.* Rezoning actions, on the other hand, are not given that presumption and will be upheld only if there is substantial evidence indicating that the rezone furthers the public welfare and that changed circumstances warranted its passage. *Hayden v. Port Townsend,* 93 Wn.2d 870, 613 P.2d 1164 (1980); *Parkridge, supra;* Note, *supra.*

The County's actions constitute rezoning. Actions are characterized as rezoning when there are specific parties requesting a classification change for a specific tract. *Fleming v. Tacoma*, 81 Wn.2d 292, 502 P.2d 327 (1972). In *Lutz v. Longview*, 83 Wn.2d 566, 520 P.2d 1374 (1974), we treated as rezoning the approval of a planned development unit. That is precisely what is involved here.

Petitioners argue that the rezoning must substantially comply with the existing comprehensive plans. Such, however, has not been the test. Nonconformance with a comprehensive plan does not necessarily render the action illegal. *Barrie, supra; Lutz, supra.* The plan is only a general blueprint and thus only general conformance is necessary. *Id.; Buell v. Bremerton*, 80 Wn.2d 518, 495 P.2d 1358 (1972).

Moreover, the master plan and the rezoning agreements do dovetail with the North Creek plan. That plan envisioned densities of 4 units per acre. It projected developments on these tracts of up to 15,000 people. And it specifically called for a planned residential development of the area pursuant to contract rezones. These are the very elements of the developers' master scheme.

Furthermore, the parties agree that the rezoning action serves the public welfare and was necessitated by changed circumstances. Planned developments such as these have been held to be in the public interest. *Lutz, supra*; Annot., *Zoning: Planned Unit, Cluster, or Greenbelt Zoning*, 43 A.L.R.3d 888 (1972). They promote the broad policy of harmonious land use. *Id.*

Since the rezone both conforms to the comprehensive plans and does further the public welfare, petitioners' spot zoning contention fails. Spot zoning is zoning with disregard for the welfare of the whole community, for the benefit of a few or in violation of a comprehensive plan. *Save, supra; Lutz, supra; Smith v. Skagit County*, 75 Wn.2d 715, 453 P.2d 832 (1969).

This case does not involve the dramatic changes which have been voided for being arbitrary and constituting spot

zoning. Such involved, for example, a shift from rural and residential uses to an oil refinery, *Chrobuck v. Snohomish County,* 78 Wn.2d 858, 480 P.2d 489 (1971), or a sudden change from residential and recreational uses to an aluminum reduction plant. *Smith, supra.* In contrast, this area has been for over a decade designated for suburban residential development. And the average density of the rezone is actually less than that permitted by the original Hillman plan. The rezone thus does not effectuate a change which is so inconsistent with the previously existing plans and uses as to be invalid.

Other arguments raised by petitioners are, in light of the above discussion, without merit.

The judgment of the trial court is affirmed.

ROSELLINI, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

STAFFORD, J. (concurring)—I agree with the majority opinion that the writ was timely filed and that owners of rezoned parcels are indispensable parties in actions to set aside those rezones. Twenty–One Oaks Associates was such an owner and thus should have been named and served. Since it was not, dismissal was required.

I do not agree with the majority, however, that the "sheer magnitude of . . . this case" requires or allows us to render what amounts to an advisory opinion. The majority attempts to justify its action by way of *analogy* to moot cases. The rule governing review of moot cases allows a court, in limited circumstances, to determine the merits of what amounts to abstract questions of law. *See Grays Harbor Paper Co. v. Grays Harbor County,* 74 Wn.2d 70, 73, 442 P.2d 967 (1968); *National Elec. Contractors Ass'n v. Seattle School Dist. 1,* 66 Wn.2d 14, 400 P.2d 778 (1965). In the moot cases relied upon, however, the court still had jurisdiction over the parties, a factor which has heretofore been considered a prerequisite to court action. *Rosling v. Seattle Bldg. & Constr. Trades Council,* 62 Wn.2d 905,

910–11, 385 P.2d 29 (1963).[2]

The court has no such jurisdiction in the instant case. Also, in moot cases, review does not affect the substantive rights of the parties—obviously. If it did, the cases would not be moot. This is to be distinguished from an active controversy wherein review can affect the substantive rights of either party therein. In the usual case, whether active or moot, we have been able to approach the issue objectively without the result being preordained.

In the instant case, however, since the court has no jurisdiction over indispensable parties a determination on the merits could only be made one way (*i.e.*, in such a way as to not prejudice the respondents who succeeded in having the suit dismissed). For example, given the posture of this case and the holding that dismissal was necessary, it is inconceivable to me that this court could have thereafter opined that the Environmental Impact Statement was inadequate, or the County acted arbitrarily and capriciously by spot zoning. A rule that allows advisory opinions to be rendered when the result can go only one way but does not leave the court free to consider other alternatives is illogical and unjust.

I would abide by what was said in *Grays Harbor County v. Williamson*, 96 Wn.2d 147, 154, 634 P.2d 296 (1981).

> Having declared that it was beyond the jurisdiction of the trial court to grant certiorari, we need not reach other issues raised by the parties. Having once decided that the relief sought was beyond the jurisdiction of the trial court to grant, we will not inject ourselves into the dispute by suggesting which of several types of relief might have been pursued or what the result might have been. Those issues are not before us and should be left to future contestants.

---

[2]We are aware of *State v. Douty,* 92 Wn.2d 930, 932–33, 603 P.2d 373 (1979). Although so denominated, *Douty* was not moot in the correct legal sense of the term. Thus, in effect, *Douty* was an advisory opinion rendered contrary to our usual view on that subject. To that extent, while *Douty* is of interest, it actually stands alone because it proceeds from "lack of jurisdiction" rather than from "mootness" in the true legal sense.

There being no jurisdiction over all necessary parties in this case, the opinion of the majority regarding the merits can have no force or effect. *Cf. Dike v. Dike,* 75 Wn.2d 1, 7–8, 448 P.2d 490 (1968) (order entered by court which lacked jurisdiction of parties or subject matter is void); *Wesley v. Schneckloth,* 55 Wn.2d 90, 93–94, 346 P.2d 658 (1959) (same). This court should refrain from voicing opinions in such cases.

BRACHTENBACH, C.J., and DORE and DIMMICK, JJ., concur with STAFFORD, J.