[No. 30109-1-II. Division Two. January 25, 2005.]

EAST COUNTY RECLAMATION COMPANY, *Respondent*, v. NANCY BJORNSEN, ET AL., *Appellants*.

*Bradley W. Andersen* and *Peter Livingston* (of *Schwabe, Williamson & Wyatt, P.C.*) and *Arthur D. Curtis, Prosecuting Attorney*, and *Richard S. Lowry, Deputy*, for appellants.

*Le Anne M. Bremer* (of *Miller Nash, L.L.P.*), for respondent.

¶1 QUINN-BRINTNALL, C.J. — Nancy Bjornsen and Gene English appeal the superior court's reversal of a Clark County Land Use Hearing Examiner's decision that found inadequate the Final Environmental Impact Statement (FEIS) filed by East County Reclamation Company (East). East filed the FEIS to assess the impact of their proposal to build a landfill in eastern Clark County over an alluvial aquifer. The superior court reversed the hearing examiner's decision, finding that he had relied on speculative reasoning and added requirements not provided in the State Environmental Policy Act (SEPA), chapter 43.21C RCW.

¶2 Because the hearing examiner selectively evaluated East's proposal under regulations from both 1991 and 1994, we remand with directions that the FEIS be evaluated under the regulations in effect at the time East filed its application.

## FACTS

¶3 In 1989 and 1991, East applied for a permit to construct a landfill on 98 acres it owned in eastern Clark County. When East filed its application, the 1985 Solid Waste Management Plan (SWMP), as amended in 1988, was in effect. The 1985/88 SWMP prohibited privately-owned, special use/limited-purpose landfills. In 1989 and 1991, Clark County required East to file a FEIS under SEPA. East finalized its SEPA document in June 2001.

¶4 The FEIS was a two-volume document that evaluated the impact of the landfill on air, water, noise, land use, aesthetics, transportation, public service, and utilities. Volume 1 analyzed the existing conditions within each area, the impact of the project, any necessary mitigation measures, and unavoidable significant impacts. Volume 2 contained the public comments received and East's responses. The FEIS also included technical appendices on geotechnical feasibility, groundwater characterization, groundwater monitoring and dilution, air quality impact, noise impact, traffic studies, and a preliminary design and operation.

¶5 Bjornsen and English (collectively "Bjornsen") challenged the adequacy of East's FEIS and in November 2001, the hearing examiner conducted a hearing. In February 2002, he issued the 78-page ruling that is the subject of this appeal.

¶6 The ruling addressed the threshold question of which law applied: the 1985/88 SWMP which was in effect when East filed its application, or amendments made to the SWMP in 1994. The hearing examiner ruled that East could waive its vested right to review of the proposal under the law in effect at the time the application was filed so that its application could be evaluated under later-enacted SWMP and statutory amendments. He also ruled that East could exercise this vested rights waiver selectively and avoid compliance with concurrency and critical aquifer recharge area regulations enacted after the application was filed, but in effect at the time of Clark County's 1994 SWMP amendment.

¶7 Applying the regulations in accord with East's selective vested rights waivers, the hearing examiner found that the FEIS was inadequate in six areas under SEPA procedural and substantive authority, and denied the conditional use and solid waste permit and the covenant release applications.

¶8 The next month, East appealed to the Board of County Commissioners, which affirmed the hearing exam-

iner's decision. In April 2002, East appealed to the Clark County Superior Court. The superior court reversed the hearing examiner's decision, finding that his ruling regarding the adequacy of the FEIS was based on speculative reasoning and requirements not provided in SEPA. Bjornsen appealed that decision to this court.[1]

## ANALYSIS

THE VESTED RIGHTS DOCTRINE AND SELECTIVE WAIVER

¶9 We review an appeal from a superior court's decision on an administrative land use appeal anew from the position of the superior court. *Young v. Pierce County,* 120 Wn. App. 175, 180-81, 84 P.3d 927 (2004) (citing *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.,* 148 Wn.2d 451, 468, 61 P.3d 1141 (2003)). We examine questions of law de novo, based on the administrative record. *HJS Dev.,* 148 Wn.2d at 468; *City of University Place v. McGuire,* 144 Wn.2d 640, 647, 30 P.3d 453 (2001). What law controls a hearing examiner's evaluation of the adequacy of an applicant's FEIS is a question of law which we review de novo. *Org. to Pres. Agric. Lands (OPAL) v. Adams County,* 128 Wn.2d 869, 875, 913 P.2d 793 (1996).

¶10 As below, Bjornsen argues that East's application must be reviewed under the law in effect at the time the application was filed and that the hearing examiner erred by allowing East to "waive" its vested rights and select which law applied to review the adequacy of its application. Bjornsen contends that allowing this selective waiver of land use regulations results in projects that do not comply with any law, violate the public's right to a coherent land development system, and add difficulty to an already complex system of land use regulations.

¶11 East asserts that vested rights exist for the benefit of developers and, like other due process rights, they can be

---

[1] Supplemental and parallel review proceedings of the project have continued but are not before us. Our appeal is limited to a review of the hearing examiner's decision regarding the adequacy of East's FEIS.

waived. East argues that common law's concept of vested rights was intended to protect an applicant's rights to due process by ensuring review of an application based on the law that existed when the application was filed, thereby preventing the local government from shifting the proverbial goal posts during the application review process.

■ ¶12 We agree that a developer is entitled to rely on the law in effect at the time he files a development application. But the vested rights doctrine does not allow a developer to file an application for an impermissible use and then to selectively waive its vested rights so it can benefit from parts of newly-enacted regulations allowing the use without having to comply with other parts of those same new regulations. Thus, we hold that the hearing examiner erred by accepting East's selective waivers and by failing to review East's application under the regulations and law in effect at the time it chose to file its initial application.

¶13 The vested rights doctrine is "based on constitutional principles of fundamental fairness, reflecting an acknowledgement that development rights are valuable and protectable property rights." *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd. for King County*, 127 Wn.2d 759, 768, 903 P.2d 953 (1995). Vesting refers to the "notion that a land use application, under the proper conditions, will be considered only under the land use statutes and ordinances in effect at the time of the application's submission." *Friends of the Law v. King County*, 123 Wn.2d 518, 522, 869 P.2d 1056 (1994). The purpose of vesting is to determine and fix the rules that will apply to a land development. *Vashon Island Comm.*, 127 Wn.2d at 768.

¶14 Here, the hearing examiner's opinion acknowledged that "the applicant and the County believe that application vested for purposes of land use regulations in 1991." Suppl. Ex. 1 (Final Order), at 4. The hearing examiner opined that if East's conditional use and solid waste applications vested in 1989 and 1991, under the vested

rights doctrine they could not be compelled to comply with concurrency[2] and critical aquifer recharge area[3] regulations enacted after the application date. But if 1991 law governs the approval of East's applications, it must satisfy the 1985/88 SWMP in effect at the time East filed its applications.[4] The hearing examiner opined that East's applications cannot satisfy the 1985/88 SWMP standards for mixed municipal solid waste landfills without excessive mitigating conditions.[5] Thus, East argued, and the hearing examiner agreed, that it would waive its vesting rights and elect to have its application evaluated under the 1994 SWMP regulations which had been enacted three years after it filed its application.

¶15 East is correct that the general purpose of vesting land use regulations is to benefit developers. But another important purpose of the vesting rule is to

> establish a date certain upon which the owner's right to use his or her property in a particular way becomes fixed so that in determining the applicable law the court is not required to search through the moves and countermoves of the parties, and "the stalling or acceleration of administrative action in the issuance of permits" in each case.

*Norco Constr., Inc. v. King County*, 29 Wn. App. 179, 189, 627 P.2d 988 (1981) (citations omitted) (quoting *Hull v. Hunt*, 53 Wn.2d 125, 130, 331 P.2d 856 (1958)). It is well settled that a land use application, under the proper

---

[2] The term "concurrency" refers to "[a]bility of the plan to provide that adequate public facilities are available when the impacts of development occur." WAC 365-195-500(2).

[3] "Aquifer recharge areas" are "areas with a critical recharging effect on aquifers used for potable water." RCW 36.70A.030(5)(b).

[4] According to the hearing examiner's decision, "[t]he 1988 SWMP did not provide for privately-owned special use/limited purpose landfills such as proposed in this case." Suppl. Ex. 1 (Final Order), at 9. *See also* Ex. 464. Thus, East was on notice that the property could not be used for a "privately owned special use/limited purpose landfill."

[5] After we filed our initial opinion in this case, East filed a motion for reconsideration in which it challenged, for the first time, this portion of the hearing examiner's conclusion. East's challenge is in the nature of a cross-appeal and is untimely.

conditions, will be considered only under the land use statutes and ordinances in effect at the time of the application's submission. *See, e.g., Friends of the Law*, 123 Wn.2d at 522; *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 275, 943 P.2d 1378 (1997); *W. Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 50-51, 720 P.2d 782 (1986). Under East's position, application review would require that the reviewing entity search through all regulations enacted since the application date and determine whether the applicant had waived its "vested rights" and had chosen to have its application evaluated under some of the new regulations.

¶16 East also argues that it is entitled to have its application evaluated under the 1994 SWMP regulations because it could have withdrawn its application and resubmitted it after the favorable amendments. Then it would have been subject to the 1994 regulations. East is correct. It could have resubmitted its application, but it did not. If it had, East's proposal would have received a new application date and been subject to *all* laws and regulations in effect on that date. East's selective waiver allowed it to comply with favorable 1994 regulations while enforcing the 1991 regulations in effect on the application date when they worked to East's advantage. Stated differently, East would "cherry pick" which regulations it wished to have its application evaluated under. East does not cite authority supporting its claim that a developer has a right to "opt out" of the regulations in place at the time its application "vested" and we are not persuaded by its argument.

¶17 If an applicant wishes to take advantage of a change in the law allowing a previously prohibited land use, it may do so by withdrawing its original application and submitting another. But it may not select which laws will govern its application. While we agree that East *could* have resubmitted its application after the 1994 SWMP amendments, it did not. Thus, the hearing examiner was required to evalu-

ate the adequacy of East's proposal under the 1991 regulations in effect when East filed its application.[6]

¶18 East's application must be reviewed under the laws existing at the time the application was filed. For the conditional use and solid waste management permit applications, this is the law existing in 1989 and 1991. For the covenant release application this is the law existing in 2001.

PROPRIETY OF PHASED REVIEW OF EAST'S FEIS

¶19 The record indicates that the superior court also struggled with determining the proper legal standard to apply to determine the adequacy of East's protracted FEIS. It resolved the conflict by ruling that East's FEIS should be reviewed in phases. This too was error.

■ ¶20 SEPA does not discuss the phasing of environmental review. But administrative rules allow for reviewing the FEIS in phases in some situations. WAC 197-11-060(5); *OPAL*, 128 Wn.2d at 879. Phasing the review of the FEIS allows an agency and the public to avoid being forced to decide issues that are not ripe for review. *See Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 638, 860 P.2d 390, 866 P.2d 1256 (1993) (citing WAC 197-11-060(5)(b)). Phased review is appropriate when the environmental document is at an early stage, such as need and site selection. *See OPAL*, 128 Wn.2d at 879. An early-stage FEIS is particularly appropriate when decision makers will have an opportunity to demand greater detail at a later project stage. *See, e.g., OPAL*, 128 Wn.2d at 879; *Cathcart-Maltby-Clearview Cmty.*

---

[6] We do not suggest that a developer may not elect to exceed code requirements existing at the time an otherwise legitimate application is filed. We note that in such circumstances, the county is bound by the vested rights rules to evaluate the proposal under the requirements of the code in effect at the time of the project's application. *See, e.g., Phillips v. King County*, 136 Wn.2d 946, 963, 968 P.2d 871 (1998). In *Phillips*, the developer applied for a permitted use and the application satisfied the less restrictive code requirements in effect at the time the application was filed. The court noted that the developer could elect to exceed the previous regulations and meet the modern regulations if it chose but could not be required to do so. 136 Wn.2d at 963.

*Council v. Snohomish County*, 96 Wn.2d 201, 210, 634 P.2d 853 (1981).

¶21 But although phased review may be beneficial in some circumstances, FEIS reviewers may not piecemeal the process by limiting review to "current segments of public works projects and postponing environmental review of later segments until construction begins." *Concerned Taxpayers Opposed to Modified Mid-South Sequim Bypass v. Dep't of Transp.*, 90 Wn. App. 225, 231 n.2, 951 P.2d 812 (1998). Moreover, phased review of a project is *inappropriate* where phasing avoids discussion or distorts the impact of a project's cumulative effects. *See Indian Trail Prop. Owner's Ass'n v. City of Spokane*, 76 Wn. App. 430, 443, 886 P.2d 209 (1994).

¶22 Here, Clark County argues that East's FEIS discussion of air emissions, noise, and water contamination for the construction and operation phases are deficient. East answers that a determination of the completeness of its FEIS is premature and asserts that these are proper subjects for review after further study and resolution.

¶23 But East's FEIS states that it "addresses the public actions/approvals that would *allow the construction and operation* of a privately owned recycling center facility and special use/limited purpose landfill." 4 Volume, Ex. 281, 1 Volume, at 1-1 (emphasis added). East did not request a need or site study nor did it ask for a phased review.[7] And Clark County did not indicate that its review of the FEIS was phased. *See* WAC 197-11-060(5)(e) (the agency in question must state that it is using phased review in its FEIS). Thus, rather than a preliminary need or site selec-

---

[7] After oral argument, East's counsel filed a statement of additional authorities citing RCW 43.21C.240. This statute addresses project review under the Growth Management Act, chapter 36.70A RCW. The statute provides that a county may issue a determination of nonsignificance or mitigated determination of nonsignificance where other regulatory requirements or local, state, or federal laws will mitigate an identified adverse environmental impact. In light of the county's decisions in 1989 and 1991 to require an environmental impact statement and the fact that the Growth Management Act was enacted years after East filed its petition, the precise reason for submitting this statement of additional authority is unclear.

tion document,[8] it is clear that East's FEIS was intended to provide information for the issuance of permits "allow[ing for] the construction and operation" of the landfill. As such, East's FEIS was offered as a final document and phased review is not proper.

¶24 Because we have ruled that the hearing examiner must examine the adequacy of East's FEIS under the law in effect at the time East filed its application, we need not review in detail the merits of the hearing examiner's decision under post-application laws, rules, and regulations.[9]

¶25 We remand the matter for an unphased review of the adequacy of East's FEIS. This review must be conducted under the laws and regulations existing at the time East filed its applications. For the conditional use and solid waste management permit applications, this is the law

---

[8] The hearing examiner assumed that there was a market (need) for solid waste disposal in the County based on the SWMP. But it noted that the FEIS and the record did not independently establish the current or future demand over the life of the landfill. Nor did it identify the sources of the construction, demolition, and land waste sufficiently for the hearing examiner to determine whether the waste would be generated with the county or transported to the landfill from other locations.

[9] We do, however, note the following: to be complete, the FEIS need not "evaluate and document all of the possible effects and considerations of a decision or to contain the balancing judgments that must ultimately be made by the decision makers." WAC 197-11-448(1). And that a complete FEIS need not evaluate every possible scenario or conduct a "worst case analysis." *Solid Waste Alternative Proponents (SWAP) v. Okanogan County*, 66 Wn. App. 439, 447-48, 832 P.2d 503 (citing *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S. Ct. 1835, 104 L. Ed. 2d 351 (1989)), *review denied*, 120 Wn.2d 1012 (1992). But the FEIS must discuss mitigation measures for significant adverse environmental impacts. WAC 197-11-440(6); *Adams v. Thurston County*, 70 Wn. App. 471, 476, 855 P.2d 284 (1993). The level of detail in the FEIS "shall be commensurate with the importance of the impact, with less important material summarized, consolidated, or referenced." WAC 197-11-402(2).

East proposes to place a landfill over an alluvial aquifer. The FEIS must present sufficient information to allow responsible officials to make reasoned choices among alternatives. *SWAP*, 66 Wn. App. at 442. The level of detail required is commensurate with the importance of the impact. WAC 197-11-402(2). In determining the adequacy of East's FEIS, the hearing examiner may consider and analyze "ultimate probable consequences," including those secondary and cumulative, whether social or economic. *Cheney v. City of Mountlake Terrace*, 87 Wn.2d 338, 343-46, 552 P.2d 184 (1976). But he or she may not base decisions on speculation regarding the competence of those charged with executing or implementing mitigation measures set forth in the plan.

existing in 1989 and 1991. For the covenant release application, this is the law existing in 2001.[10]

¶26 Reversed and remanded.

HOUGHTON and ARMSTRONG, JJ., concur.

Review denied at 155 Wn.2d 1005 (2005).

---

[10] Although the hearing examiner applied the proper law in reviewing the covenant release application, he based his decision in part "on the foregoing findings in this Final Order regarding the conditional use permit and solid waste zoning permit" to which he applied the wrong statute. Suppl. Ex. 1 (Final Order), at 77.