[No. 12203-4-III.    Division Three.    July 14, 1992.]

SOLID WASTE ALTERNATIVE PROPONENTS, *Appellant*, v. OKANOGAN COUNTY, ET AL, *Respondents*.

440

*David A. Bricklin* and *Bricklin & Gendler,* for appellant.

*Jack Burchard, Prosecuting Attorney,* and *Barnett Kalikow, Deputy;* and *David E. Ebenger,* for respondents.

SWEENEY, J. — Solid Waste Alternative Proponents (SWAP) appeals a trial court decision denying its challenge to and affirming decisions of the Okanogan County Board of Commissioners in selecting a new county landfill site. The Commissioners' decisions were based on an environmental impact statement (EIS). SWAP contends the EIS is inadequate because it fails to: (1) consider the alternative of using a regional landfill; (2) consider additional alternative sites within the county; (3) completely analyze groundwater impact; and (4) analyze the probable cost and effectiveness of mitigation measures. We affirm.

## FACTUAL BACKGROUND

Okanogan County adopted a Solid Waste Management Plan (Waste Management Plan) in 1984 pursuant to RCW 70.95.080, .090. The statutes required the County to prepare a coordinated, comprehensive solid waste management plan. Pursuant to the Waste Management Plan, the County identified and rated 16 potential landfill sites. It selected the two highest rated sites and directed that an EIS be prepared on both.

SWAP provided input during the proceedings and objected to narrowing the final EIS to only two sites, both located in the county. The final EIS was published in November 1990. SWAP filed an administrative appeal to the County Commissioners, claiming that the EIS was inadequate.

The Commissioners found that the use of regional landfills was not a reasonable alternative to developing a county landfill, and the County employed a reasonable level of analysis in selecting the two potential sites. They concluded that the EIS was adequate. The Commissioners also ruled that groundwater impact and mitigation measures had been adequately discussed in the EIS. The EIS concluded that the Rifle Range South Site was the preferred alternative; the Commissioners subsequently chose that site.

SWAP filed a petition for writ of review in the Superior Court. The court allowed the County to proceed with conditional use permit hearings on the Rifle Range South Site. The Okanogan County Board of Adjustment granted the conditional use permit subject to 34 conditions. SWAP thereafter added a challenge to the issuance of the conditional use permit to its petition in superior court.

The Superior Court concluded the EIS was adequate and affirmed the decisions of the Commissioners. SWAP's motion for direct review by the Supreme Court was denied and the case was transferred to this court.

## STANDARD OF REVIEW

■■ The adequacy of an EIS is a question of law, subject to de novo review. *Leschi Imp. Coun. v. State Hwy. Comm'n,*

84 Wn.2d 271, 286, 525 P.2d 774, 804 P.2d 1 (1974). Appellate review, however, is not totally unfettered. Decisions of an agency regarding the adequacy of an EIS are "accorded substantial weight." RCW 43.21C.090; *Mentor v. Kitsap Cy.*, 22 Wn. App. 285, 289, 588 P.2d 1226 (1978). The purpose of appellate review is to determine whether the environmental effects of the proposed action are disclosed, discussed, and substantiated by opinion and data. *Ullock v. Bremerton*, 17 Wn. App. 573, 580, 565 P.2d 1179 (citing *Leschi Imp. Coun.*, at 286), *review denied*, 89 Wn.2d 1011 (1977).

## RULE OF REASON

■ The adequacy of an EIS is subject to the rule of reason. *Cheney v. Mountlake Terrace*, 87 Wn.2d 338, 344, 552 P.2d 184 (1976). The mandate of the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, does not require that every remote and speculative consequence of an action be included in the EIS. *Cheney*, at 344. A reasonably thorough discussion of the significant aspects of probable environmental consequences is all that is required. *Trout Unlimited v. Morton*, 509 F.2d 1276, 1283 (9th Cir. 1974). The discussion of alternatives in an EIS need not be exhaustive; the EIS must present sufficient information for a reasoned choice among alternatives. *Toandos Peninsula Ass'n v. Jefferson Cy.*, 32 Wn. App. 473, 483, 648 P.2d 448 (1982).

## ISSUES

We are asked to decide whether the County's EIS is adequate. The specific questions are whether the discussion of alternative sites is adequate and whether there is adequate analysis of potential effects to groundwater and mitigation measures.

## REGIONAL ALTERNATIVES

SWAP first contends the EIS is inadequate because it fails to discuss the regional landfill option as a reasonable alternative. RCW 70.95.010(7). The three alternative landfills mentioned are situated outside of Okanogan County —

two are in Oregon and a third is in Klickitat County. SWAP asserts they should have been considered as reasonable alternatives in the EIS. The Waste Management Plan did not identify regional landfills as a recommended action. The recommendation was to pursue a central landfill in Okanogan County. No EIS was prepared in conjunction with adoption of the 1984 Waste Management Plan. SWAP, therefore, contends the County must now analyze reasonable alternatives, including use of regional landfills in its EIS.

The County argues it was not required to consider non-project alternatives in its EIS and correctly limited consideration in the EIS to the project action of situating a landfill. Nonproject actions involve the adoption of a plan to govern the development of a series of connected actions. WAC 197-11-704(2)(b)(iii). Project actions involve a decision on a specific project. WAC 197-11-704(2)(a). The Waste Management Plan was a nonproject action which mandated a project action — siting a landfill.

■ SWAP suggests that an EIS must consider and evaluate all potential alternatives. It is appropriate and in fact necessary that some screening take place before commissioning an EIS. WAC 197-11-408. The purpose of an EIS is to analyze the environmental impact of a given decision. The environment is an important and necessary consideration in the process of situating a landfill, but it is not the only consideration. The County contends its decision to narrow its choice to two sites was a policy rather than an environmental decision. We agree and find support for the County's position in the administrative regulations implementing SEPA:

> However, the environmental impact statement is not required to evaluate and document all of the possible effects and considerations of a decision or to contain the balancing judgments that must ultimately be made by the decision makers. Rather, an environmental impact statement analyzes *environmental* impacts and must be used by agency decision makers, along with other relevant considerations or documents, in making final decisions on a proposal. The EIS provides a basis upon which the responsible agency and officials can make the balancing judgment mandated by SEPA, because it provides

information on the environmental costs and impacts. SEPA does not require that an EIS be an agency's only decision making document.

WAC 197-11-448(1).

Here, the County did commission a separate study of the long-haul option — a nonproject action — and determined as a policy decision it was not a reasonable alternative. SEPA requires only a discussion of alternatives to the project action proposed in the EIS. RCW 43.21C.030(2)(c)(iii). The content of the discussion is outlined in the administrative regulations:

(b) Reasonable alternatives shall include actions that could feasibly attain or approximate a proposal's objectives, but at a lower environmental cost or decreased level of environmental degradation.

(i) The word "reasonable" is intended to limit the number and range of alternatives, as well as the amount of detailed analysis for each alternative.

(ii) The "no-action" alternative shall be evaluated and compared to other alternatives.

(iii) Reasonable alternatives may be those over which an agency with jurisdiction has authority to control impacts either directly, or indirectly through requirement of mitigation measures.

(c) This section of the EIS shall:

. . . .

(v) Devote sufficiently detailed analysis to each reasonable alternative to permit a comparative evaluation of the alternatives including the proposed action. The amount of space devoted to each alternative may vary. One alternative (including the proposed action) may be used as a benchmark for comparing alternatives. The EIS may indicate the main reasons for eliminating alternatives from detailed study.

(vi) Present a comparison of the environmental impacts of the reasonable alternatives, and include the no action alternative. Although graphics may be helpful, a matrix or chart is not required. A range of alternatives or a few representative alternatives, rather than every possible reasonable variation, may be discussed.

WAC 197-11-440(5).

The range of alternatives considered in an EIS must be sufficient to permit a reasoned choice. *Methow Vly. Citizens Coun. v. Regional Forester*, 833 F.2d 810, 815 (9th Cir. 1987), *rev'd on other grounds sub nom. Robertson v. Methow Vly.*

*Citizens Coun.*, 490 U.S. 332, 104 L. Ed. 2d 351, 109 S. Ct. 1835 (1989). The County erroneously refers to its decision-making process as a "phased review". Phased review contemplates "[b]roader environmental documents . . . followed by narrower documents . . .". WAC 197-11-060(5)(b). We agree with SWAP that here phased review could only have occurred if the Waste Management Plan had followed an EIS. It did not.

Nonetheless, SEPA does not require that every remote and speculative alternative to an action be included in the EIS. The adequacy of an EIS must be judged by application of the rule of reason. *Cheney v. Mountlake Terrace, supra* at 344. At some point, a decision must be made between what is reasonable and what is not. The agency's decision should be given great weight. *Mentor*, at 289. Both the County and the trial court concluded that the long-haul option was not a reasonable alternative.

The "long-haul alternative", or hauling waste to a regional landfill, was not analyzed in the EIS for policy reasons. The County made a policy decision that the long-haul alternative was not reasonable because the county would still need a backup landfill, two of the long-haul alternatives were situated in another state, there would be no economy of scale or control over landfill practices, and it would be impossible to project future transportation costs. Failure to include the long-haul alternative does not render the EIS inadequate.

IN-COUNTY ALTERNATIVES

SWAP next contends the EIS is inadequate because it failed to discuss reasonable alternatives within Okanogan County.

Only two alternative sites were studied in the EIS. These two sites were selected through an objective evaluation and scoring process conducted before the EIS was prepared. Sixteen potential sites for the landfill were narrowed to seven sites. These seven sites were scored on 16 criteria including geology, acquisition potential, parcel size, groundwater depth and access. Allowing a margin for error in the evaluation, four sites were about equally suitable. Two of these

sites were recommended for evaluation in the EIS. SWAP contends all four should have been evaluated.

The requirement that only reasonable alternatives be discussed in an EIS is intended to limit the number of alternatives considered, as well as the detailed analysis required for each alternative. WAC 197-11-440(5)(b)(i). The discussion of alternatives in an EIS need not be exhaustive if the impact statement presents sufficient information for a reasoned choice of alternatives. *Toandos Peninsula Ass'n v. Jefferson Cy.*, *supra* at 483.

Although all four sites may be "reasonable alternatives", the County maintains it cannot afford to evaluate all four alternatives in the EIS. The County selected what it believed to be the top two choices. The County is not required to explore every conceivable alternative. No matter which site the County selected, someone would have been unhappy, but community displeasure cannot be the basis for site selection. *Cf. Maranatha Mining, Inc. v. Pierce Cy.*, 59 Wn. App. 795, 804, 801 P.2d 985 (1990).

Reasonable people might differ over the suitability of each site. We conclude, however, that the County considered appropriate factors and we find support for that decision in the EIS. Its judgment should not be disturbed.

GROUNDWATER

SWAP next contends that the analysis found in the EIS of potential impacts to groundwater is inadequate. Because of concerns about leachate contamination of groundwater, it asserts an EIS prepared for landfills typically includes a very detailed analysis of the soils and groundwater beneath the proposed site. SWAP contends the EIS here contains almost no information on the subsurface soils and groundwater. It has provided the Klickitat County EIS and Pierce County EIS as examples of proper analysis and urges a comparison.

Groundwater contamination is a consideration when locating a solid waste disposal facility. WAC 173-304-460 sets forth standards in subsection (2)(a): "Ground water. An owner or operator of a landfill shall not contaminate the

ground water underlying the landfill, beyond the point of compliance."

■ Here, the EIS discusses topography, site geology, hydrogeology, hydrogeologic properties and groundwater resource potential for each site. The groundwater analysis in the Klickitat County EIS and Pierce County EIS is more detailed, but both involved larger and more extensive landfill projects. Here, the EIS covers the necessary information to make an informed site selection. The evaluation of groundwater impact in the EIS is adequate.

### Mitigation Measures

Finally, SWAP contends the EIS discussion of mitigation measures is inadequate, citing RCW 43.21C.030(2)(c)(ii), .031. It asserts the EIS contains many general descriptions of mitigation measures which could be used to reduce the adverse environmental impacts of the landfill, but the cost and effectiveness of the mitigation measures are almost never assessed. It, therefore, contends the EIS is inadequate.

WAC 197-11-440(6) sets out requirements for discussion of affected environment, significant impacts and mitigation measures:

> Indicate what the intended environmental benefits of mitigation measures are for significant impacts, and *may* discuss their technical feasibility and economic practicability, if there is concern about whether a mitigation measure is capable of being accomplished. *The EIS need not analyze mitigation measures in detail unless they involve substantial changes to the proposal causing significant adverse impacts,* or new information regarding significant impacts, and those measures will not be subsequently analyzed under SEPA (see WAC 197-11-660(2)). An EIS may briefly mention nonsignificant impacts or mitigation measures to satisfy other environmental review laws or requirements covered in the same document (WAC 197-11-402(8) and 197-11-640).

(Italics ours.) WAC 197-11-440(6)(c)(iv).

■ The level of detail SWAP urges is not required. "NEPA [National Environmental Policy Act] does not require a fully developed plan detailing what steps will be taken to mitigate adverse environmental impacts and does not require a 'worst

case analysis.' " (Italics omitted.) *Robertson v. Methow Vly. Citizens Coun.*, 490 U.S. 332, 359, 104 L. Ed. 2d 351, 109 S. Ct. 1835 (1989).

Mitigation measures were discussed for geology/hydrology, terrestrial ecology, transportation, and zoning/land use. The EIS adequately discussed mitigation measures for all significant impacts of the landfill.

This EIS contains 123 pages of analysis, maps and charts and several hundred more pages of appendices. The two possible landfill sites have been thoroughly examined and considered. The EIS is adequate.

We affirm the judgment of the trial court.

SHIELDS, C.J., and THOMPSON, J., concur.

Review denied at 120 Wn.2d 1012 (1992).