[Nos. 18667-5-II; 18781-7-II. Division Two. August 16, 1996.]

KIEWIT CONSTRUCTION GROUP, INC., ET AL., *Appellants*, v. CLARK COUNTY, ET AL., *Respondents*.

*Ben Shafton* and *Morse & Bratt*, for appellants.

*Arthur D. Curtis, Prosecuting Attorney,* and *Richard S. Lowry, Deputy*; and *James L. Olmsted*, for respondents.

ARMSTRONG, J. — Gilbert Western applied for a conditional use permit (CUP) to build an asphalt manufacturing plant. A hearings officer granted the permit with conditions. On appeal to the Clark County Board of Commissioners, the Board ruled that a supplemental environmental impact statement was required; in the alternative, the Board granted the CUP subject to a condition requiring construction of freeway ramps. The Superior Court af-

firmed and, on appeal, Gilbert Western argues that: (1) the Board was required to uphold the hearing examiner if substantial evidence supported his decision; (2) the final EIS was adequate and a supplemental EIS should not have been required; and (3) the condition placed upon grant of the CUP was impermissible. We affirm.

## FACTS

In 1990, Gilbert Western Corporation, a wholly-owned subsidiary of Kiewit Construction, applied to Clark County ("County") for a CUP to operate an asphalt manufacturing plant at its rock quarry along the Columbia River east of Vancouver.

In response, the County determined that an EIS was required. The draft EIS was published in December 1992 and was followed by an extended comment period, ending February 2, 1993. The final EIS was published approximately two months later, and after a public hearing, the county hearings examiner approved the CUP with a number of conditions. Among the conditions were several aimed at mitigating the effect of increased truck traffic in the area.

Several concerns prompted the traffic conditions. The quarry and proposed asphalt plant are reached via an access road from the Evergreen Highway. The quarry access road slopes steeply downward toward Evergreen Highway and enters it at a sharp angle. The angle is so sharp that trucks cannot turn directly onto the highway, but must first make a wide looping turn onto a paved shoulder turnout on the opposite side of Evergreen Highway. This can affect vehicles waiting to enter the intersection.

Another concern is that the additional truck traffic will use a one-mile stretch of Evergreen Highway between the access road and State Route 14. Evergreen Highway is an old two-lane road that parallels the Columbia River and has been designated a scenic route. The County is planning a bicycle trail along Evergreen Highway. State Route

14, a limited access highway, runs parallel to the Evergreen Highway, but no access connects State Route 14 to the quarry's access road. Thus, trucks carrying asphalt must traverse a stretch of Evergreen Highway to reach State Route 14.

Gilbert Western estimates that the asphalt plant will generate an additional 43 two-way truck trips per day entering and leaving the site, or 86 "trip-ends." On hot, sunny days, during peak asphalt production, the number of truck "trip-ends" is estimated to be between 100 and 125. This coincides with projected peak use of the planned bicycle trail.

Citizens concerned about the plant appealed the hearing examiner's decision to the Clark County Board of Commissioners (the Board). On November 10, 1993, the Board passed a resolution finding that the EIS inadequately disclosed and discussed traffic concerns, particularly the safety hazards posed by increased truck traffic along Evergreen Highway. The Board ordered a supplemental EIS (SEIS) on this issue. In the alternative, the Board granted the CUP on the condition that Gilbert Western construct on-and off- ramps from the quarry access road to State Route 14, allowing trucks to bypass Evergreen Highway completely.

Gilbert Western petitioned Clark County Superior Court for a writ of certiorari or mandamus. Gilbert Western stipulated to intervention by the South Clark County Neighborhood Coalition and other homeowners' associations. The court affirmed the Board's decision, and this appeal followed.

## DISCUSSION

### A. Standard of Review/Procedural Issue

■■ Adequacy of an EIS is a question of law subject to de novo review. *Klickitat County Citizens Against Imported Waste (Citizens) v. Klickitat County*, 122 Wn.2d 619, 632, 860 P.2d 390 (1993), 866 P.2d 1256 (1994). The State

Environmental Policy Act (SEPA) provides, however, that in any action involving the adequacy of an EIS, "the decision of the governmental agency shall be accorded substantial weight." RCW 43.21C.090; *see also* RCW 43.21C.030. We review the County's action, not the trial court's ruling. *Citizens*, 122 Wn.2d at 633.

Gilbert Western contends that the Board was required to uphold the hearing examiner's decision granting the CUP as long as substantial evidence supported it. The company relies on *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992), and *Maranatha Mining Inc. v. Pierce County*, 59 Wn. App. 795, 801 P.2d 985 (1990). In those cases, we held that where a county legislative body elects appellate jurisdiction over a hearing examiner's decision, rather than original jurisdiction,[1] that body must base its decision on the record before the examiner and must uphold that decision if it is supported by substantial evidence. *Lige*, 65 Wn. App. at 619; *Maranatha Mining*, 59 Wn. App. at 801. Both cases involved Pierce County's code.

Gilbert Western contends that Clark County's code, at the time this case was decided,[2] was identical to Pierce County's. Therefore, it argues, under *Maranatha* and *Lige* the Board had only appellate jurisdiction over the hearing examiner's decision. Clark County contends that this case can be distinguished because neither *Maranatha* nor *Lige* involved a county legislative decision solely as to the adequacy of an EIS.

A proposed land use action with significant environmen-

---

[1]RCW 36.70.970, part of the Planning Enabling Act, provides that each county electing to use a hearing examiner system must specify the legal effect of the examiner's decisions. The legal effect may be either a recommendation to the legislative authority, an administrative decision appealable to the legislative authority, or a final decision appealable to the courts. The previous version of the statute, in effect when this case was heard, provided for only the first two options.

[2]Since this case was heard, Clark County has revised the code provisions at issue here, but we consider only the code as it existed when this case was heard.

tal impacts is subject to review for both substantive and procedural compliance with SEPA. *See* RCW 43.21C.075(1). Substantive review considers the merits of the proposal, while procedural review involves the EIS process, including adequacy of the EIS. RCW 43.21C.075(3)(a),(b). SEPA also requires that there be only one consolidated agency appeal of procedural issues. RCW 43.21C.075(3)(a). Moreover, the hearing examiner statutes in effect at the time of this case required that all hearing examiner decisions be either recommendations to the county legislative authority (i.e., the Board), or appealable to that body. *See, e.g.,* former RCW 36.70.970.

Because of this statutory scheme, Clark County's code apparently gave the hearing examiner authority over substantive SEPA issues, and provided that the hearing examiner's decision was appealable to the Board. But with regard to procedural SEPA issues, the County claims that its code gave the planning director initial authority. Thus, according to the County, the planning director first determined the adequacy of the EIS and that decision was appealable directly to the Board. If the planning director's determination had first been reviewable by the hearings examiner, two agency appeals would have been possible (thus violating SEPA) because all hearing examiner decisions were subject to appeal to the Board.

The county code provisions at issue here have not been included in the record and have since been revised; thus, we are unable to verify the County's procedural scheme. But even if Gilbert Western is correct that the Board generally acts as an appellate body, adequacy of an EIS is a legal question and thus may be reviewed de novo by the Board. *Citizens*, 122 Wn.2d at 632. We also note that the hearing examiner did not in fact review the adequacy of the EIS. Therefore, the Board was not limited to an appellate role in reviewing the adequacy of the EIS.

B. Adequacy of EIS/Supplemental EIS Requirement

The legal adequacy of an EIS is tested under the

"rule of reason." *Citizens*, 122 Wn.2d 619; *Solid Waste Alternative Proponents (SWAP) v. Okanogan County*, 66 Wn. App. 439, 442, 832 P.2d 503, *review denied*, 120 Wn.2d 1012 (1992). To be adequate, an EIS must present decision-makers with a " 'reasonably thorough discussion of the significant aspects of the probable environmental consequences' " of the agency's decision. *Citizens*, 122 Wn.2d at 633 (quoting *Cheney v. City of Mountlake Terrace*, 87 Wn.2d 338, 344-45, 552 P.2d 184 (1976)). That is, an EIS must provide sufficient information to allow officials to make a reasoned choice among alternatives. *SWAP*, 66 Wn. App. at 442. This rule has been characterized as " 'a broad, flexible cost-effectiveness standard.' " *Citizens*, 122 Wn.2d at 633 (quoting R. SETTLE, THE WASHINGTON STATE ENVIRONMENTAL POLICY ACT: A LEGAL AND POLICY ANALYSIS § 14(a)(i), at 156 (4th ed. 1993)).

■ ■ Our role is to determine whether a proposed action's environmental effects are disclosed, discussed and substantiated by opinion and data. *Citizens Alliance to Protect our Wetlands (CAPOW) v. City of Auburn*, 126 Wn.2d 356, 362, 894 P.2d 1300 (1995); *SWAP*, 66 Wn. App. at 442. Under SEPA, the level of detail must be commensurate with the importance of the environmental impact and the plausibility of alternatives. *Citizens*, 122 Wn.2d at 641. We first review the information contained in the EIS, then we address Gilbert Western's arguments that the EIS is adequate. Finally, we examine whether ordering an SEIS was proper.

The EIS estimates that the proposal will generate an additional 43 trucks per day, but that this will not be significant and will not adversely affect traffic conditions. Recommended mitigation measures include installing "warning signs and an additional traffic signal loop detector at the entrance to the quarry."

With regard to the planned bicycle trail, the EIS states that the trail would "greatly improve pedestrian and bicycle safety." The EIS notes that no traffic accidents involving pedestrians or bicycles have occurred at the

intersection of the quarry access road and Evergreen Highway. *CAPOW*, 126 Wn.2d 356. But it concedes that the additional truck traffic generated by the plant may interfere with the trail and says that this negative impact "does not appear to be mitigable" because asphalt trucks must cross the railroad tracks that run parallel to the planned trail. The EIS does not address the specific impact of truck traffic on the bicycle trail. It also does not discuss the feasibility of building direct access ramps from the quarry access road onto State Route 14.

Gilbert Western first contends that the EIS is adequate because it is not required to address every conceivably relevant issue. The company reminds us that Washington courts have rarely found EISs legally inadequate. For support, the company cites *City of Richland v. Franklin County Boundary Review Board*, 100 Wn.2d 864, 676 P.2d 425 (1984), *Cheney v. City of Mountlake Terrace*, 87 Wn.2d 338, 552 P.2d 184 (1976), and *Mentor v. Kitsap County*, 22 Wn. App. 285, 588 P.2d 1226 (1978). But none of those cases involved local government officials finding an EIS to be inadequate; in each case, the appellate court rejected a challenge to the adequacy of an EIS.

Moreover, in *Richland, Cheney,* and *Mentor,* the EIS at issue failed to address impacts of a possible nearby development for which no specific proposal had yet been made. The courts held that these potential impacts need not be addressed because they were remote and speculative. *Richland*, 100 Wn.2d at 868; *Cheney*, 87 Wn.2d at 344; *Mentor*, 22 Wn. App. at 290. In contrast, the bicycle trail at issue here was already in the planning stages.

██ ██ Next, Gilbert Western argues that the EIS was not required to address recreational impacts, and it claims that questions as to the scope of the EIS are not appealable. WAC 197-11-680(3)(a)(ii). This argument is without merit. First, the scoping notice states that the EIS will discuss, among other topics, "truck traffic generation onto area roadways *and future traffic circulation in the area.*" (italics ours). This directive encompasses the effect of ad-

ditional truck traffic on bicyclists and pedestrians as well as the effect on vehicle traffic. Second, the WAC that Gilbert Western cites applies to appeals within an administrative agency, not to appeals to a local legislative body. *See* WAC 197-11-680(2), (3). If it were otherwise, an agency official could preclude review of an EIS merely by limiting its scope.

Gilbert Western also argues that the Board had no authority to order a supplemental EIS on traffic issues. WAC 197-11-600(3)(b) provides that a supplemental EIS is required if there are either: "[1] Substantial changes to a proposal so that the proposal is likely to have significant adverse environmental impacts . . . ; or [2] New information indicating a proposal's probable significant adverse environmental impacts. (*This includes discovery of misrepresentation or lack of material disclosure.*)" (italics ours). *See also Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 34, 785 P.2d 447 (1990); *West 514, Inc. v. Spokane County*, 53 Wn. App. 838, 845, 770 P.2d 1065, *review denied*, 113 Wn.2d 1005 (1989).

 Here, the SEIS was justified based upon Gilbert Western's failure to disclose the full effect of truck traffic on bicyclists and other trail users, and the company's failure to discuss meaningfully the alternative of direct access ramps onto State Route 14. The Board did not err in ordering an SEIS.

But Gilbert Western further contends that the Board's motive in ordering the SEIS was improper because it was based on impermissible considerations, particularly community displeasure with the asphalt plant. Land use decisions may not be based solely upon community displeasure. *Maranatha*, 59 Wn. App. at 804. In *Maranatha*, we overturned the Pierce County Council's denial of a permit to operate a surface gravel mine and asphalt plant. *Maranatha*, 59 Wn. App. at 797. We found that the council had disregarded the record before it, basing its decision instead "on community displeasure and not on reasons backed by policies and standards as the law requires." *Maranatha*, 59 Wn. App. at 805.

This case can be distinguished from *Maranatha*. While the County did receive a number of negative comments on the proposed asphalt plant, the record does not demonstrate that the Board based its decision on these responses rather than on the facts and applicable standards. For one thing, if the Board had been basing its decision solely on community displeasure, it would have denied the CUP outright instead of simply remanding for a supplemental EIS. Furthermore, many of the community comments raised objections other than traffic concerns, but the Board rejected these. Thus, this argument also fails.

## C. Alleged Impermissible Conditions

As an alternative to the SEIS, the Board granted Gilbert Western's CUP on the condition that the company construct access ramps onto State Route 14 from the quarry access road. Gilbert Western argues that this condition is unnecessarily burdensome, violates due process, and constitutes an unconstitutional taking.

■ RCW 43.21C.060 and WAC 197-11-660(1)(c) both provide that SEPA "[m]itigation measures shall be reasonable and capable of being accomplished." While Gilbert Western argues that it is unclear whether access ramps could even be constructed, the County points out that this condition is not a mitigation measure. Instead, the ramps would remove the need for any further environmental study because this action would eliminate truck use of Evergreen Highway. The County's argument is correct. The Board did not unilaterally require Gilbert Western to build ramps as a condition of receiving a CUP; this is simply an alternative which the company is free to disregard.

Gilbert Western's arguments that the condition violates both due process guarantees and the Takings Clause are also without merit. First, the condition is not a land use *regulation*, which may violate due process if it fails a reasonableness test. *See Robinson v. City of Seattle*, 119

144

Wn.2d 34, 51, 830 P.2d 318, *cert. denied*, 506 U.S. 1028 (1992); *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 330, 787 P.2d 907, *cert. denied*, 498 U.S. 911 (1990). In support of its takings argument, Gilbert Western cites *Dolan v. City of Tigard*, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994). In *Dolan*, the Supreme Court held that a taking may occur when conditions placed upon granting a permit are not "reasonably related" to the impact of the proposed development. *Dolan*, 114 S. Ct. at 2321. This case can be distinguished from *Dolan* because the access ramp condition is an alternative to the SEIS requirement and is not the only means by which Gilbert Western may obtain its CUP. Even if *Dolan* does apply, the record does not contain enough information to allow us to determine whether access ramps are reasonably related to the proposed asphalt plant. This is precisely the problem the Board faced and for which it ordered a supplemental EIS.

For these reasons, the Board's alternative condition that Gilbert Western build direct access ramps is not impermissible.

We affirm.

HOUGHTON, A.C.J., and TURNER, J., concur.